UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LONNIE LEE BURTON,

                    Plaintiff,

     v.

PAT GLEBE, ERIC JACKSON,
KEVIN SHANAHAN, DAVID POE,
TERA McELRAVY, and THOMAS
L. L'HEUREUX,

                    Defendants.

NO. C12-5104 RBL/KLS

**REPORT AND RECOMMENDATION**
**NOTED FOR:  AUGUST 2, 2013**

Before the Court is Defendants' Motion for Summary Judgment.  ECF No. 53.

Defendants served Plaintiff with a *Pro Se* Prisoner Dispositive Motion Notice consistent with

*Woods v. Carey,* 684 F.3d 934, 935, 940-41 (9th Cir. 2012) and in accordance with the holding

of *Rand v. Rowland,* 154 F.3d 952, 962-63 (9th Cir. 1998).  ECF No. 54.  Plaintiff filed a brief

in opposition.  ECF No. 56.  Defendants filed a reply.  ECF No. 57.

Lonnie Burton is a pro se prisoner who is currently incarcerated at the Airway Heights

Correction Center (AHHC).  He filed this 42 U.S.C. § 1983 action against Stafford Creek

Corrections Center (SCCC) Superintendent Pat Glebe and staff members Eric Jackson, Kevin

Shanahan, David Poe, Tera McElravy, and Thomas L'Heureux in connection with his 51-day

placement in administrative segregation (Ad Seg).  ECF No. 7 at 3-4.  Mr. Burton alleges that

his 5th and 14th Amendment due process rights were violated when the Defendants placed him

in Ad Seg pending the outcome of an investigation.  *Id.* at 17.  Mr. Burton's retaliation and Eighth Amendment claims were previously dismissed by the Court.  ECF No. 49.

Mr. Burton asserts that Defendants' summary judgment motion is premature.  ECF No. 56.  He contends that there are outstanding discovery motions on which the Court has yet to rule and that he intends to file his own cross summary judgment motion once discovery is completed.   The Court has denied the discovery motions.  ECF No. 55.  In addition, while Mr. Burton broadly asserts additional discovery is needed, he fails to state with any specificity what additional information he is seeking.  Defendants' motion is not premature.

Having reviewed Defendants' motion, Plaintiff's opposition, supporting declarations, and balance of the record, the Court recommends that Defendants' motion for summary judgment (ECF No. 53) be granted.

## FACTS

On November 21, 2011, Mr. Burton was placed in Ad Seg by Defendant Shanahan.  ECF No. 56-1, Declaration of Lonnie L. Burton, ¶ 4.  Mr. Burton claims that he was placed in Ad Seg based on charges that "were either false or falsified by these two defendants."  *Id.*

Mr. Burton was assigned to housing unit H4 at SCCC.  Defendant Poe states that on or about November 20, 2011, he was approached by an offender who informed him of sexual misconduct by Mr. Burton.   On November 21, 2011, Defendant Poe was approached by another offender who made additional allegations of sexual misconduct by Mr. Burton.  Some of the allegations were that Mr. Burton had requested that offenders allow him to watch them take showers in exchange for a bag of coffee.  One of the offenders also stated that Mr. Burton had performed oral sex on him.  Because the allegations were possible Prison Rape

1  Elimination Act (PREA) violations, Defendant Poe informed Defendant Shanahan of the

2  information and requested that Mr. Burton be placed in Ad Seg pending the outcome of an

3  investigation pursuant to DOC Policy 490.850(V).  Because the alleged victims were also

4  housed in H4, Defendants Poe and Shanahan believed that safety and security interests

5  warranted placing Mr. Burton into Ad Seg.  Defendant Poe submitted the Administrative

6  Segregation Referral and Segregation Authorization form for approval.  Defendant Shanahan

7  approved the segregation placement.   ECF No. 53-3, Exhibit 3, Declaration of David Poe, ¶ 4,

8  Attachment A; ECF No. 53-4, Exhibit 4, Declaration of Kevin Shanahan, ¶ 4.

9       According to Tera McElravy, SCCC Custody Unit Supervisor, DOC Policy 490.850

10  (Response to and Investigation of Sexual Misconduct) sets forth the process and procedure for

11  responding to, and investigating, claims of sexual misconduct.  Pursuant to DOC Policy

12  490.850(I), the complaints made regarding sexual misconduct will be held in confidence and

13  on an official need to know basis with dissemination of information restricted to the fewest

14  number of staff possible.  ECF No. 53-1, Exhibit 1, Declaration of Tera McElravy, ¶ 4;

15  Attachment A.  According to SCCC Superintendent Pat Glebe, each allegation is taken

16  seriously and investigated accordingly.  ECF No. 53-2, Exhibit 2, Declaration of Pat Glebe, ¶

17  3.

18       Defendant Poe states that Mr. Burton was informed of the general nature of the

19  allegations against him and was told that he would be placed in Ad Seg pending the

20  investigation.  Defendants Poe and Shanahan state that they never discussed specifics or

21  questioned Mr. Burton regarding these allegations.  Pursuant to DOC Policy 480.850(VII)(A),

only staff officially assigned the investigation may investigate the claims and neither

Defendant Poe nor Defendant Shanahan were officially assigned to conduct the investigation.

They state that they were not involved with the subsequent investigation of the sexual

misconduct complaints or any other decisions regarding Mr. Burton's stay in Ad Seg.  ECF

No. 56-3, Poe Decl., ¶ 5-6; ECF No. 56-4, Shanahan Decl., ¶ 5.

Mr. Burton acknowledges that he was given a form stating that he was being placed in

Ad Seg "pending investigation of possible being a threat to safety and security of the

institution/possible PREA," but was never told the factual allegations leading to his placement.

ECF No. 56-1, Burton Decl., ¶ 5.

According to Thomas L'Heureux, SCCC Correctional Specialist 3, DOC Policy

320.200, Administrative Segregation, outlines the procedures and processes regarding an

offender's temporary placement into segregation.  DOC Policy 320.200(III) provides that a

classification meeting will occur within two days of the offender's initial placement into

segregation.  Subsequent reviews then occur every seven calendar days for the first two months

and at least every 30 calendar days thereafter.  Offenders have the opportunity to present

witnesses or provide testimony on their behalf.  The reviews are then documented and

provided to the Superintendent, or designee, for approval or denial.  ECF No. 53-5, Exhibit 5,

Declaration of Thomas L'Heureux, ¶ 3, Attachment A.

At the time of Mr. Burton's placement into Ad Seg on November 21, 2011, Defendant

L'Heureux was notified that Mr. Burton was being referred to segregation "pending

investigation for being a possible threat to the safety and security of the institution-possible

PREA."  Defendant L'Heureux did not have any other information related to the allegations

against Mr. Burton.  Defendant L'Heureux also did not ask for information relating to the

allegations against Mr. Burton because such information is considered to be confidential under

DOC Policy 490.850.  This general information was conveyed to Mr. Burton.  ECF No. 53-5,

L'Heureux Decl., ¶ 5.

On November 23, 2011, Defendant L'Heureux conducted the initial segregation

review.  As the PREA investigation was ongoing, Defendant L'Heureux recommended Mr.

Burton's segregation placement be maintained pending completion of the investigation.  On

November 30, 2011, CUS Arlow conducted the segregation review and recommended that Mr.

Burton's segregation placement be maintained pending the outcome of the investigation.

Subsequent reviews were performed by Defendant L'Heureux on December 7, 2011,

December 14, 2011, December 21, 2011, December 28, 2011, and January 4, 2012.  As the

PREA investigation was ongoing and there was no new information received, he made the

recommendation to retain Mr. Burton in segregation.  At each of Mr. Burton's segregation

placement reviews, an update of the status regarding the pending investigation was also

received.  ECF No. 53-5, Exhibit 5, L'Heureaux Decl., ¶ 6.

Mr. Burton acknowledges that the foregoing reviews were held and that he was present.

He claims, however, that Defendant L'Heureux told him he did not know any of the factual

allegations against him and that he must remain in segregation until someone allowed him to

leave.  Mr. Burton states that he was not provided with an opportunity to present testimony or

evidence and was not allowed to see or review the evidence or any confidential information.

ECF No. 56-1, Burton Decl., ¶ 6.

Defendant Eric Jackson, SCCC Associate Superintendent of Programs, was the Superintendent's designee who approved Mr. Burton's placement and retention in Ad Seg. Each time Mr. Burton's placement was reviewed, Defendant Jackson agreed with the segregation placement as the investigation was ongoing.  Due to safety and security concerns related to the complaints against Mr. Burton, Defendant Jackson believed that it was necessary to keep Mr. Burton in Ad Seg pending the outcome of the investigation.  ECF No. 63-6, Exhibit 6, Declaration of Eric Jackson, ¶ 5.

Mr. Burton states that at one of his hearings, he asked for witness statements from the alleged victims and asked to review summaries of any confidential information.  ECF No. 56-1, Burton Decl., ¶ 12.  According to Defendant L'Heureux, Mr. Burton made one request for witness statements.  However, after he was asked to clarify what information he was seeking, Mr. Burton rescinded his request.  ECF No. 53-5, Exhibit 5, L'Heureux Decl., ¶ 7.  Defendant L'Heureux also states that there have been times when the segregation review was conducted at the offender's cell door.   This would have been during incidents when custody staff was unavailable to assist with escorting the offender to the hearing room.  During those occasions, the offender was still provided with the opportunity to speak on his behalf or present testimony or evidence.   ECF No. 53-5, Exhibit 5, L'Heureux Decl., ¶ 10.

On November 28, 2011, DOC Headquarters opened an investigation regarding complaints of sexual misconduct against Mr. Burton.  Defendant Tera McElravy, Custody Unit Supervisor, was assigned to investigate the claims a few days later by the SCCC PREA Investigation Unit.   ECF No. 53-1, Exhibit 1, McElravy Decl., ¶ 6.  Defendant McElravy conducted interviews of the alleged victims and Mr. Burton.  Because Mr. Burton was in Ad

1  Seg at the time and space in the segregation unit is limited, she had to schedule a time to speak

2  with him one week before the interview date.  *Id.*, ¶ 7.

3        During Defendant McElravy's interview of Mr. Burton, she informed him of the

4  general nature of the complaints against him and explained that two separate offenders had

5  made allegations of sexual misconduct.  Defendant McElravy explained that Mr. Burton was

6  being investigated for sexually harassing other offenders and not heeding their requests to stop.

7  She did not provide Mr. Burton with the names of the offenders who made the complaint due

8  to safety and security concerns.  She also informed Mr. Burton that once her investigation was

9  completed, her report would be forwarded to the PREA Screening Committee for a

10  determination if the complaints were substantiated, unsubstantiated or unfounded.  *Id.*

11        Mr. Burton acknowledges that he was interviewed by Defendant McElravy, but

12  complains that he was not told who made the allegation of sexual harassment or when or where

13  it was to have occurred.  ECF No. 56-1, Burton Decl., ¶ 8.  Attached to Mr. Burton's

14  declaration is a copy of Defendant McElravy's Interview Summary dated December 8, 2011.

15  Mr. Burton changed the date to December 9, 2011, made some changes within the text as to his

16  statements, and attested to the truth and accuracy of his statements on December 9, 2011.  In

17  bold lettering at the beginning of the Interview Summary it states:

18          **There has been a PREA allegation against you that stems from offender**
19          **complaints in your unit.  Offenders have complained that you have made**
        **sexually [sic] advances towards them on multiple occasions even after being**
20          **asked to stop.**

21  ECF No. 56-1, p. 15 (emphasis in original).

22        In addition to interviewing the alleged victims and Mr. Burton, Defendant McElravy

23  conducted interviews with SCCC staff.  She compiled the Investigation Report around

December 16, 2012 and forwarded the report to the PREA Review Committee sometime after its completion. *Id.*, Exhibit 1, ¶ 8, Attachment B.

On January 6, 2012, the SCCC PREA Review Committee convened.  Defendants Jackson and McElravy were present at that meeting.  The PREA Review Committee found that there was not enough evidence against Mr. Burton and recommended that the allegations be deemed to be "unsubstantiated."  The committee also recommended that Mr. Burton be transferred to a different facility.   ECF No. 53-1, Exhibit 1, McElravy Decl, ¶ 9; ECF No. 53-6, Exhibit 6, L'Heureux Decl., ¶ 6, Attachment B.  On the same day, Defendant L'Heureux informed Mr. Burton of the committee's decision.  ECF No. 53-5, Exhibit 5, L'Heureaux Decl., ¶ 7.

According to Defendant Jackson, the Appointing Authority did not concur with the PREA Review Committee's recommendation that Mr. Burton be sent to a different facility. ECF No. 53-6, Exhibit 6, Jackson Del., ¶ 7.  On January 10, 2012, another segregation review was conducted and it was determined that Mr. Burton would be released from Ad Seg as the investigation had been completed. However, it was decided that Mr. Burton should be placed in a unit other than his original unit based on the recommendation of the PREA committee. ECF No. 53-5, Exhibit 5, L'Heureux Decl., ¶ 8; ECF No. 53-6, Exhibit 6, Jackson Decl., ¶ 7; Attachment C.

While he was in segregation, Mr. Burton sent correspondence and kites to Defendant Glebe on December 1, 2011, December 8, 2011, December 19, 2011, December 23, 2011, and January 4, 2012.  In these communications, Mr. Burton informed Defendant Glebe that he had been placed in Ad Seg but not told the reason for his placement.  ECF No. 53-2, Exhibit 2,

Glebe Decl., ¶¶5-9, Attachments A-E.   Each time Mr. Burton was told that he was being

investigated and would remain in segregation until the investigation was competed.  *Id.*  For

example, in a memorandum dated December 20, 2011, Defendant Glebe responded to Mr.

Burton's letter of December 11, 2011, as follows:

> You have appealed your Administrative Segregation placement.  You advise
> you are being held in Segregation for allegations of sexual harassment.  You
> state that the investigation is over, and you should be infracted or released from
> Segregation.
>
> The investigation is still on-going, so I cannot respond to your request.  When
> the investigation is complete, you will be apprised of the findings and your
> options.
>
> I would encourage you to work with your assigned counselor, as he is in the
> best position to assist you with your questions in a timely manner.

ECF No. 53-2, Exhibit 2, Glebe Decl., ¶ 7, Attachment C.

## SUMMARY JUDGMENT STANDARD

The Court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a).  The moving party has the initial burden of production to demonstrate the

absence of any genuine issue of material fact.  Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,*

263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  To carry this burden, the moving party need not

introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply

point out the absence of evidence to support the nonmoving party's case.  *Fairbank v.*

*Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

"If the moving party shows the absence of a genuine issue of material fact, the non-

moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine

issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).  The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint.  *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).  A court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."  *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001).  This is true even when a party appears *pro se*.  *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).

Where the nonmoving party is *pro se*, a court must consider as evidence in opposition to summary judgment all contentions "offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the party appearing pro se] attested under penalty of perjury that the contents of the motions or pleadings are true and correct."  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (citation omitted), *cert. denied*, 546 U.S. 820, 126 S. Ct. 351, 163 L.Ed.2d 61 (2005).

//

//

//

1

**DISCUSSION**

2

**A.      Due Process – Administrative Segregation**

3

"It is well-established that '[t]he requirements of procedural due process apply only to

4

the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty

5

and property.'"  *Burnsworth v. Gunderson,* 179 F.3d 771, 774 (9th Cir.1999) (*quoting Bd. of*

6

*Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

7

"Under *Sandin*, a prisoner possesses a liberty interest under the federal constitution when a

8

change occurs in confinement that imposes an 'atypical and significant hardship ... in relation

9

to the ordinary incidents of prison life."  *Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir.2000)

10

(*quoting Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

11

"There is no single standard for determining whether a prison hardship is atypical and

12

significant, and the 'condition or combination of conditions or factors [of the alleged hardship]

13

... requires case by case, fact by fact consideration.'"  *Ramirez v. Galaza*, 334 F.3d 850, 861

14

(9th Cir.2003), *quoting Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir.1996).

15

While administrative segregation "typically ... in and of itself does not implicate a

16

17

protected liberty interest," it may do so under certain circumstances.  *Serrano v. Francis*, 345

18

F.3d 1071, 1078 (9th Cir.2003) (handicapped inmate confined in administrative segregation for

19

two months without use of his wheelchair suffered an atypical and significant hardship), *cert.*

20

*denied*, 543 U.S. 825, 125 S.Ct. 43, 160 L.Ed.2d 37 (2004).  *See also, Jackson v. Carey*, 353

21

22

F.3d 750 (9th Cir.2003) (allegations of three-custody levels materially different from one

23

another causing major disruption to prisoner's environment sufficiently plead section 1983 due

24

process claim); *Ramirez*, 334 F.3d at 861 (reversing and remanding dismissal of due process

25

26

1   claim for application of *Sandin* factors where prisoner alleged his segregated unit was

2   overcrowded and violent, isolation severed ties with his family, he was required to participate

3   in psychiatric programs, and he was in confinement for two years).  "What less egregious

4   condition or combination of conditions or factors would meet the test requires case by case,

5   fact by fact consideration." *Kennan*, 83 F.3d at 1089.

6

7           The factual comparison requires consideration of (1) whether the challenged condition

8   "mirrored those conditions imposed upon inmates in administrative segregation and protective

9   custody," and thus was comparable to restrictions that are within the prison's discretionary

10   authority; (2) the duration of the condition or confinement, and the degree of restraint imposed;

11   and (3) whether the action will necessarily impact the duration of the prisoner's sentence.  *Id*.;

12   *Keenan*, 83 F.3d at 1089.

13

14           To the extent a protected liberty interest does exist, "[t]he quantum of process

15   constitutionally due to segregated inmates depends upon whether the segregation is punitive or

16   administrative in nature."  *Stewart v. Alameida*, 418 F.Supp.2d 1154, 1165 (N.D.Cal.2006).

17   With respect to administrative segregation, the only procedures that due process requires are

18   that: (1) "an informal nonadversary hearing" be held "within a reasonable time after the

19   prisoner is segregated"; (2) the prisoner be informed of the charges against him or the prison

20   officials' "reasons for considering segregation"; and (3) the prisoner be allowed "to present his

21   views to the prison official charged with deciding whether to transfer him to administrative

22   segregation."  *Toussaint*, 801 F.2d 1080, 1101 (9th Cir.1986), *overruled on other grounds*,

23   *Sandin*, 515 U.S., 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418.  The prisoner is not entitled

24   to a "detailed written notice of charges, representation of counsel or counsel-substitute, an

25

26

REPORT AND RECOMMENDATION - 12

1    opportunity to present witnesses, or a written decision describing the reasons for placing the

2    prisoner in administrative segregation." *Id*. at 1100–01 (citations omitted).

3            Mr. Burton alleges that he was denied due process when he was placed and kept in Ad

4    Seg pending the PREA investigation.  Although he acknowledges that he was told that he was

5    the subject of the investigation and that complaints had been made against him, he argues that

6    he was denied due process because he was never provided with more detail of the nature of the

7    sexual conduct and specifically was not given the names of the complainants.  ECF No. 56-1,

8    Burton Decl., ¶¶ 5, 8.  He also claims that the allegations were false or that they were falsified

9    by Defendants Shanahan and Poe.  ECF No. 56-1, ¶¶ 4.

10

11           The Court turns first to Mr. Burton's claim that his placement in Ad Seg was based on

12   fabricated charges.  An inmate "has no constitutionally guaranteed immunity from being

13   falsely or wrongly accused of conduct which may result in the deprivation of a protected

14   liberty interest."  *Freeman*, 808 F.2d at 951 (where inmate was granted hearing and afforded

15   opportunity to rebut charges against him, fact that charges filed by prison guard were

16   unfounded did not give rise to per se constitutional violation).   Mr. Burton also contends that

17   the allegations against him were false or that they were falsified by Defendants Poe and

18   Shanahan.  Mr. Burton presents no evidence to support this vague assertion.  The evidence

19   reflects that Defendants Poe and Shanahan made the initial recommendation that Mr. Burton be

20   placed in Ad Seg because other inmates complained of sexual misconduct by Mr. Burton and

21   DOC policy required his placement in Ad Seg pending an investigation into those sexual

22   misconduct complaints.  In addition, Defendants Poe and Shanahan were not involved in the

23   PREA investigation or Ad Seg reviews.

24

25

26

REPORT AND RECOMMENDATION - 13

1

2
          Regardless, Mr. Burton has failed to demonstrate that the conditions he experienced in

3
Ad Seg constituted an atypical and significant hardship in relation to the ordinary incidents of

4
prison life and therefore, he has not established a protected liberty interest.   Mr. Burton

5
remained in Ad-Seg for 51 days.   In his complaint, Mr. Burton states that during his time in

6
Ad Seg, he was subjected to living conditions which differed from conditions in SCCC's

7
general population in the following manner: (1) 23 or 24 hours in cell; (2) metal strips on door

8
with no key; (3) prohibited communications in yard; (4) confined to two yards with no other

9
prisoners; (5) limited to 3 showers per week for ten minutes; (6) strip searches to and from

10
visits; (7) one hour visit per week; (8) possessions limited to address book and glasses; (9)

11
limited access to telephone, counsel, outside recreation, and communication; (10) limited

12
human contact; (11) harsh restraints (handcuffs and ropes) during hearings and visits; (12)

13
ineligibility for earned time; (13) placement for indefinite period of time; (14) a dimmed light

14
on in cell at all times; (15) no religious services; (16) opaque windows; (17) loss of job and

15
income; and (18) loss of special holiday family visits.  ECF No. 7, pp. 11-12.  Although

16
allowed no-contact visits, Mr. Burton told visitors not to visit him because of the harsh

17
restraints that were used during the visits and the to-and-from strip searches.  *Id.*, p. 13. He also

18
claims he suffered from health problems including back pain, dry, cracked, and bloody feet and

19
lips due to the air circulation system, and food poisoning.  *Id.*  Mr. Burton also claims that he

20
lost the ability to earn five days of good time while he was segregated (*see* ECF No. 56-1, p.

21
7), but the inability to accumulate good time while in Ad–Seg is not an atypical and significant

22
hardship because Washington state inmates do not have an inherent federal constitutional

23

24

25

26

1    interest in amassing good time credits or earning early release.  *Wolff v. McDonnell*, 418 U.S.

2    539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

3           Mr. Burton compares his Ad Seg conditions with the conditions found in *Wilkinson v.*

4    *Austin*, 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005).  In *Wilkinson*, the Supreme

5    Court found that there was a liberty interest in avoiding confinement in the Ohio State

6    Penitentiary ("OSP"), a "Supermax" facility.  OSP prisoners were subject to the following

7    conditions: remained in 7 x 14 foot cells for 23 hours per day; restricted to one hour per day

8    recreation in one of two indoor recreation areas; a dimmed light remained on in cell at all times

9    and inmates who attempted to shield the light were punished; no communication with other

10   inmates; rare visitation which was conducted through glass walls; and indefinite placement.

11   *Id.* at 2389.  The Supreme Court held that such confinement imposed an atypical and

12   significant hardship because placement at OSP was 1) indefinite and reviewed only annually

13   after the initial 30–day review and 2) disqualified an inmate for parole consideration.  *Id.* at

14

15   2394–95.

16          The "hardships" noted by Mr. Burton are not atypical or significant.  His 51-day

17   placement in Ad Seg was not indefinite and he received both an initial and weekly reviews

18   during the first 30 days and monthly reviews thereafter.   Short durations of segregation are not

19   deemed excessive nor a major disruption to an inmate's environment.  *Wilkinson,* 545 U.S. at

20   223 (*citing Sandin v. Conner*, 515 U.S. 472, 486 [1995]); *see Bryant*, 536 F. Supp2d at 1166

21

22   (placement of inmate in segregation for 18 months pending resolution of disciplinary charge

23   did not impose atypical hardship even though placement imposed restrictions).  Restrictions on

24   "exercise, shower, hygiene and visitation privileges" do not amount to a major disruption in an

25

26

offender's environment.  *Sandin v. Conner*, 515 U.S. 472, 486 (1995).  The loss of telephone

privileges and the loss of work or education opportunities do not implicate a protected liberty

interest.  *Baumann v. Ariz. Dept. of Corr.*, 754 F.2d 841, 846 (9th Cir. 1985); *Overton v.

Bazzetta*, 539 U.S. 126, 135 (2003).   Administrative segregation does not constitute either a

"major change in the conditions of confinement," like solitary confinement, see *Wolff v.

McDonnell*, 418 U.S. 539, 571 n.19 (1974), or the "intolerably cruel" confines of a "filthy,

overcrowded cell and a diet of 'gruel.'"  *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978); *see

also Toussaint,* 801 F.2d 1080, 1092 (9th Cir.1986) ("administrative segregation is the sort of

confinement that inmates should reasonably anticipate receiving at some point in their

incarceration").

   Even if the conditions described could be considered atypical and significant such that

they give rise to a protected liberty interest, the evidence reflects that Mr. Burton received all

requisite due process.  As noted above, the only procedures that due process requires are that:

(1) "an informal nonadversary hearing" be held "within a reasonable time after the prisoner is

segregated"; (2) the prisoner be informed of the charges against him or the prison officials'

"reasons for considering segregation"; and (3) the prisoner be allowed "to present his views to

the prison official charged with deciding whether to transfer him to administrative

segregation."  *Toussaint*, 801 F.2d at 1101; Stewart, 418 F.Supp.2d at 1165 (quoting Hewitt,

459 U.S. 476).

   Mr. Burton acknowledges that he was provided notice that his placement in Ad Seg

was due to a "pending investigation of possibly being a threat to safety and security of the

institution/possible PREA."  ECF No. 56-1, Burton Decl., ¶ 5.   Mr. Burton was provided with

an initial segregation review on November 23, 2011 and subsequent reviews on November 30, 2011, December 7, 14, 21, and 28, 2011, and January 4 and 10, 2012.  At each review, it was recommended that Mr. Burton's segregation placement be maintained pending the sexual harassment investigation.  Each time Mr. Burton's segregation placement was reviewed, an update of the status regarding the pending investigation was received.  *See* ECF No. 53-5, Exhibit 5, L'Heureaux Decl., ¶ 6.  On the one occasion that Mr. Burton asked for witness statements, he rescinded the request after he was asked to clarify what information he was seeking.  ECF No. 53-5, Exhibit 5, L'Heureux Decl., ¶ 7.

The evidence also reflects that Mr. Burton was interviewed during the sexual harassment investigation, that he made a statement, and that he was given an opportunity to make edits to that statement.  The Interview Summary provided to him also advised him that the PREA allegations against him stemmed from complaints by offenders in his unit that he was making unwanted sexual advances.  ECF No. 56-1, p. 15.

Mr. Burton acknowledges that his retention in Ad Seg was reviewed every week and that his retention was due to safety and security concerns relating to allegations by other inmates that he was making unwanted sexual advances towards them.  He also acknowledges that he was allowed to present his views in response to those allegations.  ECF No. 56-1, p. 15. Thus, Mr. Burton was informed of the reason for his segregation *albeit* he is unhappy that the notice lacked more details of the nature of the sexual harassment and the names of the inmates who submitted the PREA complaints.

There is no basis for Mr. Burton's contention that he was entitled to a more detailed notice containing names and dates and a description of the sexual misconduct.  *See, e.g.,*

*Saavedra v. Scribner*, 482 Fed. Appx 268, 271-272 (9th Cir. 2012); *Zimmerlee v. Keeney*, 831 F.2d 183, 188 (9th Cir.1987) ("*Wolff* [*v. McDonnell*, 418 U.S. 539, 563–66 (1974)] provides little guidance as to the specificity of notice necessary to satisfy due process."); *McCollum v. Miller*, 695 F.2d 1044, 1048 (7th Cir.1982) (more notice is not necessary where disclosure of evidence may impose significant costs on the prison's investigation into, and prosecution of, misconduct).  In determining what process is due, courts should remember "the legitimate institutional needs of assuring the safety of inmates and prisoners" and avoid burdensome administrative requirements that might be susceptible to manipulation."  *Walpole v. Hill*, 472 U.S. 445, 454-55, 105 S.Ct. 2768, 2773-74 (1985).  Here, the evidence reflects that Defendants' decisions relating to Mr. Burton's Ad Seg placement were based on DOC policy, confidential PREA complaints, and the need to maintain safety and security in the prison facility.

Mr. Burton has failed to raise a genuine issue of material fact related to his due process claim.  Therefore, Defendants are entitled to summary judgment.

**B.     Qualified Immunity**

Under the doctrine of qualified immunity, prison officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A civil rights plaintiff opposing a claim of qualified immunity must establish the existence of a constitutional violation, clearly established law to support the claim, and that no reasonable official could believe their conduct was lawful. *Pearson v.*

1   *Callahan*, 555 U.S. 223 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Siegert v. Gilley*,

2   500 U.S. 226, 232 (1991).

3       As the Court has concluded that Mr. Burton has failed to raise material issues of fact

4   relating to his constitutional claim, it is not necessary to address the question of qualified

5   immunity.

6

7                                    **CONCLUSION**

8       Based on the foregoing, the undersigned recommends that Defendants' Motion for

9   Summary Judgment (ECF No. 53) be **GRANTED;** and that Plaintiff's claims against

10  Defendants be **dismissed with prejudice.**

11      Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

12  Procedure, the parties shall have fourteen (14) days from service of this Report to file written

13  objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of

14  those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).

15

16  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter

17  for consideration on **August 2, 2013**, as noted in the caption.

18

19      **DATED** this   10th   day of July, 2013.

20

21                                    Karen L. Strombom
                                      United States Magistrate Judge
22

23

24

25

26

REPORT AND RECOMMENDATION - 19